**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**ROSEMARY WILLIAMS,**

       **Plaintiff,**              **CIVIL ACTION NO. 03-CV-73682-DT**

   vs.

                                     **DISTRICT JUDGE DENISE PAGE HOOD**

**D. PRINCE,**                     **MAGISTRATE JUDGE MONA K. MAJZOUB**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**RECOMMENDATION**: The Court recommends that Defendant's Motion for Summary Judgment be **GRANTED** and the instant case dismissed.

\*\*\*

Plaintiff was allowed to proceed *in forma pauperis* and filed the instant complaint on September 29, 2003 pursuant to 42 U.S.C. § 1983 alleging violations of her constitutional rights. On June 9, 2004, the Honorable Denise Page Hood dismissed Plaintiff's claims against all Defendants except for Defendant Prince. Judge Hood also dismissed those of Plaintiff's claims that challenged the validity and duration of her prison sentence. The case has been referred to the undersigned for all pretrial proceedings

On September 20, 2004, Defendant Prince filed a Motion to Dismiss For Failure to Exhaust Administrative Remedies. On November 19, 2004, the undersigned recommended that Defendant Prince's Motion to Dismiss for Failure to Exhaust be denied, which recommendation was later adopted by Judge Hood. Also on November 29, 2004, this Court issued a Scheduling Order with a discovery cutoff date of March 1, 2005 and a dispositive motion cutoff date of April 1, 2005. On January 31, 2005, Defendant Prince filed a Motion to Dismiss and for Summary Judgment to which Plaintiff filed

a response on February 22, 2005.

Plaintiff alleges that while housed at the Robert Scott Correctional Facility, she was "intimidated, demeaned, humiliated, degraded, harassed, and threatened" by Defendant Prince, a correctional officer. Allegedly, Plaintiff's problems with Prince began in April 2002 when Plaintiff witnessed Prince "put her finger in inmate Reed's face and yelled and screamed at her." (Plaintiff's Complaint, pg. 4, ¶ 2). Plaintiff later wrote a statement about Prince's behavior and the alleged incident. Thereafter, Plaintiff alleges that she was harassed and retaliated against by Prince. On April 21, 2002, Plaintiff claims that inmate Dunning, "who's [sic] one of [Defendant] Prince's favorite prisoners, approached me . . . and pointed the hot curling iron directly toward my face, and threatened me" (Plaintiff's Complaint, pg. 4-5). Plaintiff alleges that Defendant Prince instigated this incident and then stood by and watched without intervention. *Id.* at 5.

On April 23, 2002, Plaintiff was physically assaulted by inmates Dunning and Williams. Plaintiff claims she was "left with bruises on [her] face and with a sore body." *Id.* Defendant, who witnessed the assault, indicated that "[b]oth inmates were swinging at each other at which time you could not tell who was the aggresser [sic]." (Memorandum of Defendant Prince dated April 23, 2002). Plaintiff was issued a misconduct charge for fighting and was taken to Health Care for treatment after which she was placed in segregation. A Major Misconduct Hearing was held on April 29, 2002, at which time Plaintiff was found guilty of the charged offense. Plaintiff now claims that Defendant Prince "arranged" for inmates Williams and Dunning to carry out the assault. Plaintiff also claims that

> [b]efore the alleged planned fight . . . [she] spoke to Deputy Davis in our unit's Bow Tie area pertaining to an alleged fight that was in the works to happen, by two inmates and against my person. I also notified Deputy Davis that, I overheard [Defendant] Prince telling Inmates Dunnings and Williams, '*I'm gonna get that bitch.*'

(Plaintiff's Complaint, pg. 6). On April 29, 2002, Plaintiff wrote a letter to the Michigan State Police

about "C/O Prince's threats and continuous harassment and sought protection." *Id.* The State Police forwarded Plaintiff's letter to Michigan Department of Corrections Internal Affairs Section. On June 3, 2002, Plaintiff wrote a letter to Captain Weiginka "explaining [her] situation, and reported C/O Prince's continuous abuse, threat[s], and harassment towards me." *Id.*

On July 1, 2002, Plaintiff wrote a letter to Deputy Warden Davis requesting a "SPON to be placed in my file against Inmate Williams, due to the fight incident that was allegedly planned against myself by C/O Prince." *Id.* In her letter, Plaintiff also "explained C/O Prince's continuous abuse, threat, and harassment toward me." *Id.* In a letter dated July 5, 2002, Deputy Warden Davis responded to Plaintiff's allegations and indicated that "[a] thorough investigation of your allegations against RUO Prince was conducted and submitted to the Warden in early June. The institutional investigation concluded that the charges could not be substantiated."

On August 26, 2002, Defendant Prince was allegedly assigned to work in Plaintiff's housing unit. Plaintiff claims that Prince's presence scared her and caused her body to shake (Plaintiff's Complaint, pg. 7). "Out of fear, [Plaintiff] stayed in [her] cell until approximately 0745." *Id.* Plaintiff allegedly complained to Sergeant DeShields who ordered Plaintiff to go to school. Upon arriving visibly upset at the education building, Plaintiff asked to go to the Control Center where she expressed her concern about Defendant Prince and the alleged assault. *Id.* Sergeant Payne directed Plaintiff to return to her unit to which Plaintiff allegedly relied, "I want to go to the bam bam because I feel unstable and suicidal." *Id.* Plaintiff was placed in a segregation unit where, twenty minutes later, she attempted suicide. *Id.*

In September 2002, Plaintiff wrote letters to both the Bureau of Prisons and the United States Department of Justice complaining of the "threats, intimidation, dangerous behavior and continuous abuse and harassment that C/O Prince is waging against me." (Plaintiff's Complaint, pg. 9).

Plaintiff further alleges that

> [o]n October 13, 2002, inmate Straight was pushing [Plaintiff] out of the dining hall in a wheel chair while I was disabled. Inmate Straight used the third door, which is designed for 'wheel chairs only.' C/O Prince was standing inside the dining hall, near the officer's podium. When C/O Prince saw me in the wheel chair, she rushed into the third door, cut the wheel chair off, and stopped inmate Straight from proceeding to push me to Health Care. C/O Prince purposely stood over me in a threatening manner. I felt intimidated, demeaned, humiliated, degraded, harassed and threatened by her. [] C/O Prince has a habit of walking close to me and yelling at me. I feel humiliated and threatened by her. If I express my feeling about her behavior, I end up going to the 'special precautions' unit. This is how nervous she makes me. C/O Prince's behavior is retaliation as a result of the grievances and the complaints I filed against her. C/O Prince's behavior is a mental and physical abuse against my person.

(Plaintiff's Complaint, pg. 4, Statement of Facts, ¶ 1). Based on the foregoing, Plaintiff asks this Court to issue an Order expunging from her prison file all major misconduct reports related to Defendant Prince and restoration of disciplinary credits. Plaintiff also seeks punitive and monetary damages due to "physical, emotional, psychological and mental anguish and feelings of cruel and unreasonable humiliation that would not be found under the conditions of a civilized society" (Plaintiff's Complaint, pg. 11, Relief).

In her Motion to Dismiss and for Summary Judgment, Defendant argues that Plaintiff has failed to state a claim upon which relief may be granted and has failed to support a claim of retaliation. Defendant also asserts that she should be shielded from liability under the doctrine of qualified immunity.

**STANDARD OF REVIEW**

When considering a Rule 12(b)(6) motion to dismiss, the trial court must accept all the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. FED. R. CIV. P. 12(b)(6); *see Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). "Dismissal of a complaint for the failure to state a claim upon which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 1997).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits. *Ashbook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

**EIGHTH AMENDMENT CLAIMS**

The crux of Plaintiff's claim is that Defendant Prince "arranged" for Plaintiff to be assaulted by

other inmates. Such a claim must be analyzed under the Eighth Amendment's provision prohibiting cruel and unusual punishment. The cruel and unusual punishment clause of the Eighth Amendment prohibits the wanton infliction of pain, guards against intolerable prison confinement, *Whitley v. Albers*, 475 U.S. 312, 327 (1986), and condemns behavior that is "barbarous" or contravening to society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). A prisoner alleging a violation of the Eighth Amendment must show a culpable state of mind on the part of the prison official. *Wilson v. Seiter*, 501 U.S. 294 (1990)("[a]n intent requirement is implicit in that Amendment's ban on cruel and unusual punishment."). In instances of assault, a plaintiff must establish that the defendant had "actual knowledge" of a "specific" threat of harm to the plaintiff or participated in the injurious activity. *See Marsh v. Arn*, 937 F.2d 1056 (6th Cir. 1991).

> Plaintiff alleges that
>
>> Before the alleged planned fight that took place on April 23, 2003, I spoke to Deputy Davis in our unit's Bow Tie area pertaining to an alleged fight that was in the works to happen, by two inmates and against my person. I also notified Deputy Davis that, I overheard [Defendant] Prince telling Inmates Dunnings and Williams, *'I'm gonna get that bitch.'* Deputy Davis did not take this allegation seriously as she did not investigate my verbal complaint. A couple of days later, the fight incident took place. All this could have been prevented if Deputy Davis had investigated my concerns that I addressed to her.

(Plaintiff's Complaint, pg. 6). In an Affidavit, Defendant Prince denies having "arranged for anyone to do anything to inmate Williams." (Defendant's Exhibit B, ¶ 5). Even if the Court were to construe the allegations of Plaintiff's complaint as an affidavit opposing Defendant's Motion for Summary Judgment, Plaintiff has failed to create a genuine issue of material fact with respect to Defendant's alleged planning of the assault against Plaintiff. As the Supreme Court made clear in *Liberty Lobby*:

> There is no issue for trial unless there is *sufficient evidence* favoring the non moving party for a jury to return a verdict for that party. If the [non-movant's] evidence is *merely colorable, or is not significantly probative*, summary judgment may be granted.

*Liberty Lobby*, 477 U.S. 242, 249-50 (1986). Affidavits that do not affirmatively show personal knowledge of specific facts are insufficient to defeat a motion for summary judgment. *Accord* FED. R. CIV. P. 56(e); *Terry v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994); *Conner v. Sakai*, 994 F.2d 1408, 1412 (9th Cir. 1992) ("Bare allegations do not suffice to defeat a motion for summary judgment."); *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992); *Schweitzer-Reschke v. Avnet, Inc.*, 874 F. Supp. 1187, 1191 n.2 (D. Kan. 1995) (affidavits not considered because they "(1) lack any evidence of personal knowledge that the conduct occurred; and (2) they are general conclusions and lack the specificity required to create a genuine issue of material fact."); *Pender v. United States*, 866 F. Supp. 1129, 1133 (N.D. Ind. 1994); *Castillo v. Bowles*, 687 F. Supp. 277, 280 (N.D. Tex. 1988) ("General conclusory allegations . . . do not become sufficient simply because they are put in affidavit form[.]"). Likewise, it is clear that this is the rule of law within this Circuit. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992); *Ward v. Washtenaw County Sheriff's Dep't*, 881 F.2d 325, 330 n.5 (6th Cir. 1989); *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 316 (6th Cir. 1989); *Emmons v. McLaughlin*, 874 F.2d 351, 354-55 (6th Cir. 1989); *In re New Center Hosp.*, 187 B.R. 560, 571 (Bankr. E.D. Mich. 1995); *Mercer v. Jaffe, Snider, Raitt & Heuer P.C.*, 736 F. Supp. 764, 776 (W.D. Mich. 1990).

Plaintiff's conclusory statement that Defendant arranged for the assault is not significantly probative of Defendant's personal involvement. Plaintiff does not state the basis for her "knowledge" of how Defendant "arranged" for the assault upon her. Nor does she provide any corroborating evidence such as affidavits from third persons that provide a basis for Plaintiff's allegations. Instead, Plaintiff offers a consistent account of a conflict that she had with Defendant over a period of time. This fact alone, however, does not support her assertion that Defendant "arranged" for prisoners Dunning and Williams to assault her. Furthermore, the fact that Plaintiff may have told MDOC officials that she believed Defendant had arranged for the assault upon her does not amount to sufficient

evidence to support her claims. The Court is well aware of Plaintiff's good faith belief that Defendant arranged for the assault. Such a good faith belief, however, is not sufficient evidence to withstand Defendant's Motion for Summary Judgment.

As the Sixth Circuit has pointed out, the Supreme Court's *Celotex/Liberty Lobby/Matsushita* holdings established the following principles for "new era" summary judgment practice:

> . . . .
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
> . . . .
> 6. As on federal directed verdict motions, the "scintilla rule" applies, *i.e.*, the respondent must adduce more than a scintilla of evidence to overcome the motion.
> . . . .
> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
> . . . .
> 10. . . . The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the [non-movant], the motion should be granted. The trial court has at least some discretion to determine whether the [non-movant's] claim is "implausible."

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citations and footnotes omitted). Here, Plaintiff has provided no evidence to this Court, other than her own conclusory allegations, that Defendant was involved in the assault carried out by inmates Dunning and Williams. Given that this case has been pending since September 2003 and discovery is now closed, summary judgment is appropriate given that Plaintiff has failed to offer any evidence to support her claims against Defendant.

Accordingly, Defendant's Motion for Summary Judgment should be granted as to Plaintiff's claim based on Defendant's alleged involvement in the assault.

**RETALIATION AND CONSPIRACY CLAIMS**

In order for a Plaintiff to survive a Motion for Summary Judgment in a § 1983 conspiracy action, he must set forth specific facts showing either the existence or the execution of the claimed conspiracy. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987). Furthermore, these facts must show overt acts related to the promotion of the conspiracy and some link between the alleged conspirators. Plaintiff must present facts that the conspirators agreed to commit an act which deprived him of a right, privilege or immunity secured by the Constitution or the laws of the United States. *Hobson v. Wilson*, 737 F.2d 1, 51 (D.C. Cir. 1984). It is essential that the conspiratorial conduct in fact resulted in a violation of plaintiff's constitutional rights. *Vaden v. Village of Maywood*, 809 F.2d 361, 366 (7th Cir. 1987). Vague and conclusory allegations of conspiracy without specific facts are insufficient to state a claim. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985). Other than her conclusory statements alleging a conspiracy between Defendant and inmates Dunning and Williams, Plaintiff has failed to offer any evidence to support a conspiracy claim.

Finally, Plaintiff claims that Defendant retaliated against her after she complained of Defendant's abusive language and behavior towards other prisoners. In order to prove a claim based on retaliation, the Plaintiff must prove that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal connection between elements one and two, that is, the adverse action was motivated at least in part by the Plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)(citations omitted).

Even assuming Plaintiff's complaints about Defendant's behavior amounted to protected

conduct, Plaintiff fails to describe with specificity the adverse action[1] taken against her or draw a causal connection between her protected conduct and the adverse action.  The fact that Plaintiff was charged and later found guilty of fighting does not amount to adverse conduct because MDOC has shown that its actions were reasonable and justified.  In *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990)(per curium), the court held that:

> While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform.  Any other rule would allow a prisoner to openly flout prison rules after filing a grievance and then bring a claim under § 1983 arguing that prison officials disciplined him in retaliation for his filing a grievance.

*See also Carter v. McGrady*, 292 F.3d 152 (3d Cir. 2002) (affirming district court's grant of summary judgment where the defendants' actions were reasonably related to legitimate penological interests and not in retaliation for protected speech); *Mt. Healthy City Sch. Dist. Bd. Of Educ. V. Doyle*, 429 U.S. 274 (1977).  Given these facts it is difficult, if not impossible, for Plaintiff to prove a causal connection between her protected conduct (complaining about Defendant's behavior) and MDOC's adverse action toward Plaintiff (writing a misconduct ticket and placing her in segregation).  Defendant is entitled to summary judgment on this claim.

Accordingly, Defendant's Motion for Summary Judgment should be GRANTED and Plaintiff's case dismissed in its entirety.

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation,

---

[1] Even if the Court accepted as true Plaintiff's allegations that Defendant made unfriendly comments toward her, petty exchanges of insults between a prisoner and guard do not amount to constitutional torts.  *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987)(per curiam).

but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge. Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.


Dated: March 21, 2005　　　　　　　　　　s/ Mona K Majzoub
　　　　　　　　　　　　　　　　　　　　MONA K. MAJZOUB
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE


**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon Rosemary Williams and Diane M. Smith on this dated March 21, 2005.

Dated: 3/21/05　　　　　　　　　　　　s/ Lisa C. Bartlett
　　　　　　　　　　　　　　　　　　　　Courtroom Deputy